UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:13-cr-84-HSM-SKL |
| v. | ) |
| | ) |
| JEREMY CLARK | ) |

## REPORT AND RECOMMENDATION

Before the Court is a motion to suppress filed by Defendant Jeremy Clark ("Defendant") [Doc. 15], in which Defendant seeks that the Court suppress all evidence seized as the result of the warrantless and nonconsensual searches of his "smartphone" after his arrest [Doc. 15].[1] The main issue presented is whether text messages reviewed by law enforcement during the searches should be suppressed. Defendant argues for suppression of all evidence obtained from the searches of the smartphone, claiming the searches do not fit into any exception to the warrant requirement. The government argues that the searches were proper under the search-incident-to-arrest exception or, alternatively, that exclusion is not a proper remedy for any violation of the Fourth Amendment in this case [Doc. 20]. After considering the evidence and arguments, I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

**I. FACTS**

Defendant is charged in a one-count indictment alleging he is an unlawful user of a controlled substance in possession of a firearm and ammunition. At the hearing, the government

---

[1] The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 16]. The government filed a response in opposition [Doc. 20], and an evidentiary hearing was held on the motion on February 4, 2014. During the hearing, the government represented that the only evidence from the smartphone searches that it seeks to use in its case-in-chief are certain text messages.

offered the testimony of Phillip S. Narramore, a Bureau of Alcohol, Tobacco, Firearms, and Explosives task force officer and detective with the Chattanooga Police Department ("CPD"). Defendant offered no testimony. Considering Officer Narramore's testimony and the exhibits,[2] the relevant, and largely undisputed, facts are as follows.

All of the events at issue took place on April 29, 2013, after a same-day burglary involving the theft of firearms from a pawn shop. Officers with the CPD were attempting to locate "Kerry," a suspect in the burglary, at two particular houses. When CPD Officer Watkins arrived at one of the houses around 10:45 a.m., he saw Defendant walk out of the house. When Officer Watkins yelled for Defendant to stop, Defendant fled on foot. During the ensuing chase, Officer Watkins saw Defendant discard a firearm. Officer Watkins caught and secured Defendant, then retrieved the abandoned gun. Officer Watkins arrested Defendant for unlawful possession of a firearm without a permit. Items from Defendant's pockets, including a "smartphone," were seized during a search of his person incident to arrest.[3]

Officer Narramore, who was at the scene to investigate the theft of firearms during the burglary, picked up the smartphone after it had been removed from Defendant's pocket and looked at the call log and recent text messages for the purpose of determining if Defendant was in contact with "Kerry." At the time, Officer Narramore did not know if the gun abandoned by Defendant was one of the firearms stolen from the pawn shop. Officer Narramore's initial review of the call log and

---

[2] A video and audio recording of the interview of Defendant is government's Exhibit 1, and the executed rights waiver and consent to search forms are Defendant's Exhibits 1 and 2.

[3] No testimony regarding the make, model, or digital data storage capabilities of the phone was elicited during the hearing. The consent to search form appears to describe the phone as an AT&T Pantech cell phone. During argument, it was indicated the phone was not password protected and the parties agreed it was a "smartphone."

2

text messages occurred within minutes of Defendant's apprehension at the site of his arrest. Officer Narramore did not have consent or a warrant to search Defendant's smartphone at that time. Officer Narramore thought "by law" that while he would need a warrant or consent to have a technology expert extract data from the phone, he could look at the call log and text messages as part of the search conducted incident to Defendant's arrest.

Defendant was transported to the CPD headquarters for questioning regarding the pawn shop burglary. Around 2:40 p.m., at the inception of the interview, Officer Narramore advised Defendant of his Miranda rights and told Defendant he could leave. Defendant waived his rights and signed a waiver of rights form at 2:44 p.m. In a recorded interview, Officer Narramore and another officer questioned Defendant for about an hour concerning the burglary and about certain data found on the smartphone. During the questioning, Officer Narramore and Defendant looked at various data contained in the smartphone, which was in the officers' possession during the interview. As the officers looked at data on the smartphone, they and Defendant discussed pictures, tweets, contacts, the call log, and text messages. Defendant at one point showed Officer Narramore a photograph of his child on the smartphone. Officer Narramore never saw any data regarding "Kerry" on the smartphone.

Near the conclusion of the interview, Officer Narramore asked Defendant to sign a consent to search form so data could be extracted by "dumping" the digital content of the smartphone. Officer Narramore told Defendant the global positioning ("GPS") data from the smartphone could establish whether Defendant was near the pawn shop at the time of the burglary. Officer Narramore said if the consent form was not signed, he would try to seek a warrant. Officer Narramore's testimony indicated Defendant agreed to sign the consent form because he wanted to get his phone

3

back quickly.

The government's response did not argue the smartphone searches during the interview were based on consent by Defendant. After viewing the recording of the interview, however, Officer Narramore testified he probably asked for and got consent to search the smartphone at some point prior to asking Defendant to sign the consent to search form because, toward the end of the recorded interview, Defendant stated, "I let you get at my phone."[4] Officer Narramore, however, could not remember if he had asked for and obtained consent to look at the data on Defendant's smartphone prior to asking Defendant to sign the consent to search form. Officer Narramore conceded he cannot distinguish between text messages viewed prior to execution of the consent form from text messages viewed only after the consent form was signed.

## II. ANALYSIS

Defendant seeks to suppress all data obtained from his smartphone. The government represents that the only information from the smartphone that it intends to introduce in its case-in-chief at trial are certain text messages. Given that the government only intends to introduce text messages, and cannot distinguish at what point the text messages were first obtained, the resulting pertinent issue is whether all text messages must be suppressed.

The cornerstone of Defendant's argument for suppression is the Fourth Amendment to the United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

---

[4] This is the only portion of the recorded interview played during the hearing. Neither party asked the Court to review any other aspect of the recorded interview.

place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. By its own terms, the Fourth Amendment proscribes only unreasonable searches and seizures. *Scott v. United States*, 436 U.S. 128, 137 (1978); *United States v. Bishop*, 338 F.3d 623, 625 (6th Cir. 2003).[5] Courts must "examine the totality of the circumstances" to determine whether a search or seizure is reasonable under the Fourth Amendment. *Samson v. California*, 547 U.S. 843, 848 (2006). The reasonableness of a search or seizure "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Id.* (citations and internal quotation marks omitted).

**A.     Consent**

Preliminarily, I will address the issue of consent. It is well settled that "a search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "It is the Government's burden by a preponderance of the evidence, to show through clear and positive testimony that valid consent was obtained." *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010) (citations and internal quotation marks omitted). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227; *United States v. Guimond*, 116 F.3d 166, 170-71 (6th Cir. 1997).

The government claims the back-and-forth nature of the interview – with Defendant showing

---

[5] A defendant bears the burden of establishing a legitimate expectation of privacy to assert a Fourth Amendment right. *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). While this issue was not specifically addressed during argument, it appears uncontested that Defendant had a legitimate expectation of privacy with respect to the text messages saved on his smartphone.

5

Officer Narramore a photograph on the phone and Officer Narramore questioning Defendant about other items saved on the phone – indicates Defendant must have given Officer Narramore consent to search the smartphone at some point. This claim is arguably bolstered by Defendant's comment near the conclusion of the interview that, "I let you get at my phone." However, this ambiguous statement by Defendant does not clearly demonstrate Defendant gave voluntary consent for a search of his smartphone or when any alleged consent was given in relation to Narramore's search for text messages. The statement could simply mean Defendant did not object at some point when he saw the officers looking through the digital data on his phone. Given that Officer Narramore admitted he could not remember if he asked for and obtained consent, and that the recording of the interview apparently does not include any officer asking for or obtaining consent to search the smartphone, I **FIND** the government has not met its burden to show through clear and positive testimony that Defendant validly consented to a search of his smartphone prior to the time he signed the written consent form.

      B.      **Search-Incident-to-Arrest Exception to Warrant Requirement**

Turning to the government's main argument that the search did not require consent or a warrant, it is well-settled that the police may perform a warrantless search of an individual's person incident to a lawful custodial arrest. *See, e.g., United States v. Robinson*, 414 U.S. 218, 234-35 (1973); *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007). Defendant does not challenge the legality of his arrest, does not deny that the arresting officers had the authority to conduct a warrantless search of his person incident to arrest, and does not contest the seizure of his smartphone from his person. Rather, he contends the nonconsensual searches of his smartphone, both at the scene of his arrest and during his interview, were unlawful under the Fourth Amendment.

The Supreme Court has consistently allowed a thorough search of an arrestee and the items or containers on his person at the time of arrest, because an arrestee has a reduced expectation of privacy in his person. *See, e.g., Robinson*, 414 U.S. at 223-24 (upholding search of closed cigarette package on arrestee's person); *United States v. Edwards*, 415 U.S. 800, 807-08 (1974) (warrantless search and seizure of arrestee's clothing ten hours after arrest upheld where search of clothing could have been made "on the spot"). As a result, the Fourth Amendment "permits warrantless searches incident to custodial arrests, and has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained." *Edwards*, 415 U.S. at 802-03. This search-incident-to-arrest exception to the warrant requirement allows police to search for and remove any weapons that might pose a danger to officer safety, and the exception allows police to search an arrestee to prevent the concealment or destruction of evidence. *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *Robinson*, 414 U.S. at 234; *United States v. Buford*, 632 F.3d 264, 268 (6th Cir. 2011).

In *Arizona v. Gant*, 556 U.S. 332 (2009), the Supreme Court reexamined the search incident to arrest doctrine in the context of the search of an arrestee's vehicle and returned its focus to *Chimel*-like justifications for the exception. The Court limited its prior holding in *New York v. Belton*, 453 U.S. 454 (1981), and redefined the parameters of such vehicle searches incident to arrest, finding that the area within which the arrestee might gain possession of a weapon or destructible evidence defines the boundaries of the exception. *Gant*, 556 U.S. at 341-44. While search of the person was not at issue in *Gant*, the reasoning of the Supreme Court merits consideration as it held the rationale for a vehicle search incident to arrest "authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within

7

reaching distance of the passenger compartment at the time of the search." *Id*. at 343, 351. In so holding, the Court appears to have limited the scope of such a search commensurate with its original justifications – officer safety and preservation of evidence – the same justifications which undergird the authority to search a person incident to a lawful custodial arrest.[6]

### C.     Searches of Smartphones

During argument at the hearing, the parties agreed the memory of cell phones or smartphones may be repositories of a vast amount of private information. The purposes and uses of such phones are obviously broader than items or containers traditionally subject to a search incident to arrest, such as wallets, purses, and briefcases, given that a search of the digital data contained in a smartphone could reveal private information such as emails, text messages, notes, photographs, recordings, voice mail messages, passwords, financial records, tracking information, website preferences, calendars, associations and contacts, and other private information. The search of the memory of a smartphone potentially reveals even more information than the search of a home computer. For instance, a smartphone has the ability to track and record the phone's movements through GPS or geolocation technology and metadata can reveal the location where a photograph was taken.

Although the use of such smartphones is now pervasive, the law is unsettled as to whether

---

[6] The Court further concluded the "circumstances unique to the vehicle context justify a search incident to arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id*. at 343 (citations and internal quotation marks omitted).

the data in an arrestee's smartphone may be searched, in whole or in part, incident to arrest.[7] To date, neither the Supreme Court nor the Sixth Circuit Court of Appeals ("Sixth Circuit") has addressed whether a warrantless search incident to arrest of the data contained in the memory of a smartphone found on an arrestee's person violates the Fourth Amendment.

On the one hand, a significant majority of the circuit courts of appeals to reach this issue have concluded that at least some search of the data on a cell phone found on an arrestee's person is permissible. *See, e.g.*, *United States v. Rodriguez*, 702 F.3d 206, 209-10 (5th Cir. 2012) (holding a warrantless search of cell phone contents did not exceed permissible scope of search incident to arrest)*; United States v. Flores-Lopez*, 670 F.3d 803, 809-10 (7th Cir. 2012) (upholding search incident to arrest of cell phone for its phone number but questioning whether more invasive search would be permissible); *Silvan W. v. Briggs*, 309 F. App'x. 216, 225 (10th Cir. 2009) (holding that "the permissible scope of a search incident to arrest includes the contents of a cell phone found on the arrestee's person") (citing *United States v. Finley*, 477 F.3d 250, 260 (5th Cir. 2007)); *United States v. Murphy*, 552 F.3d 405, 410-12 (4th Cir. 2009) (upholding search of cell phone as incident to arrest); *United States v. Mendoza*, 421 F.3d 663, 668 (8th Cir. 2005) (seizure and inspection of cell phone valid as a search incident to lawful arrest). Several district courts within this circuit have also reached the conclusion that at least some search of the contents of an arrestee's cell phone may be conducted without a warrant. *See, e.g., United States v. Martin*, No. 07-CR-20605-1, 2013 WL

---

[7] On January 17, 2014, the United States Supreme Court granted a writ of certiorari presumably to resolve whether a warrantless search of a cell phone or smartphone incident to arrest is permissible pursuant to the Fourth Amendment. *See United States v. Wurie*, No. 13-212, 2013 WL 4402108 (U.S. Jan. 17, 2014) (whether the Fourth Amendment permits the warrantless search of an arrestee's cell phone call log); *Riley v. California*, No. 13-132, 2013 WL 3938997 (U.S. January 17, 2014) (whether evidence admitted at petitioner's trial was obtained in a search of petitioner's cell phone that violated petitioner's Fourth Amendment rights).

9

55693, at *4-5 (E.D. Mich. Jan. 3, 2013) (rejecting arrestee's contention that the officers who arrested him unlawfully searched the contact list on his cell phone, and recognizing the manifest need to preserve evidence as justification for an officer's retrieval of certain information from a cell phone seized incident to an arrest); *United States v. Slaton*, No. 5:11–131, 2012 WL 2374241, at *8-9 (E.D. Ky. June 22, 2012) (upholding search of cell phone including text messages, because the search occurred at the time and the place of arrest). In addition, several state supreme courts have allowed a search of at least some of the digital contents of a cell phone incident to arrest. *See, e.g.*, *Hawkins v. State*, 723 S.E.2d 924, 926 (Ga. 2012) (upheld search of text messages that was limited "as much as is reasonably practicable by the object of the search"); *Commonwealth v. Phifer*, 979 N.E.2d 210, 216 (Mass. 2012) (upheld search of recent call list).

On the other hand, a smaller number of courts, including one circuit court, several state supreme courts, and several district courts, have now rejected the notion that the contents of a cell phone are susceptible to search upon arrest, particularly in circumstances where the phone has been removed from the arrestee's person by the police. *See, e.g.*, *United States v. Wurie*, 728 F.3d 1 (1st Cir. 2013), *cert. granted*, 2013 WL 4402108 (U.S. Jan. 17, 2014) (holding that warrantless searches of cell phones incident to arrest should not be allowed because such searches cannot be justified by officer safety or the preservation of evidence given the privacy implications inherent in cell phone data searches); *United States v. Mayo*, No. 2:13-cr-48, 2013 WL 5945802, at *14 (D.Vt. Nov. 6, 2013) (holding seizure of arrestee's cell phone lawful, but finding the Fourth Amendment requires a warrant to perform a forensic search of the lawfully seized cell phone); *United States v. DiMarco*, No. 12 CR 205 RPP, 2013 WL 444764, at *12 (S.D.N.Y. Feb. 5, 2013) (finding a cell phone search unlawful under the search-incident-to-arrest exception in part because the search was "exploratory

10

and rummaging in nature"); *Smallwood v. State*, 113 So. 3d 724, 735-36 (Fla. 2013) (holding "that, while law enforcement officers properly separated and assumed possession of a cell phone from [arrestee's] person during the search incident to arrest, a warrant was required before the information, data, and content of the cell phone could be accessed and searched by law enforcement"); *State v. Smith*, 920 N.E. 2d 949, 953-54, 956 (Ohio 2009) (distinguishing cell phones from other "closed containers" that have been found searchable incident to an arrest and concluding that, because an individual has a high expectation of privacy in the contents of her cell phone, any search thereof must be conducted pursuant to a warrant), *cert. denied*, 131 S. Ct. 102 (2010);.

The government argues the searches of the seized smartphone conducted by Officer Narramore at the scene of the arrest and during the interview were appropriate and reasonable under the circumstances as the searches were limited to looking at the information readily available on the smartphone and the police did not extract further data from the phone's memory, such as geolocation data, until after obtaining Defendant's consent. Officer Narramore and the government's interpretation of the search-incident-to-arrest exception would seemingly give law enforcement broad latitude to conduct a search of any electronic device seized on an arrestee's person during a lawful arrest, including a laptop computer or a tablet device, so long as law enforcement could access the information without using the services of a technology expert to extract digital data.

Defendant argues such broad latitude runs contrary to *United States v. Lucas*, 640 F.3d 168 (6th Cir. 2011), wherein the Sixth Circuit addressed whether the scope of a defendant's written consent to search a residence included a laptop computer found within the residence. In holding the scope of the voluntary consent included the computer, the Sixth Circuit stated "analogizing computers to other physical objects when applying Fourth Amendment law is not an exact fit

11

because computers hold so much personal and sensitive information touching on many private aspects of life." *Lucas*, 640 F.3d at 178. The Sixth Circuit also recognized "individuals have a reasonable expectation of privacy in the content of emails stored, sent, or received through a commercial internet service provider." *Id.* (citing *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010)). The Sixth Circuit reasoned "there is a far greater potential for the intermingling of documents and a consequent invasion of privacy when police execute a search for evidence on a computer." *Id.* (quoting *United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001) (internal quotation marks omitted). As noted by the government, the laptop computer search in *Lucas* was consensual and any applicability to this case is certainly not binding, but the case does indicate the Sixth Circuit's concern with Fourth Amendment issues presented by devices capable of storing vast amounts of personal and sensitive private information, such as a smartphone.

I first **CONCLUDE** the Court need not distinguish between the arguably more limited initial search at the scene of arrest and the subsequent more extensive search during the interview for purposes of the suppression of text messages as the government cannot distinguish between text messages found during the initial on-scene review, during the interview, and during the comprehensive data extraction. Second, I **CONCLUDE** the government has not demonstrated officer safety or preservation of evidence were motivating factors for the searches, especially given Officer Narramore's unequivocal testimony that he was searching for evidence that Defendant was associated with "Kerry" and involved in the pawn shop burglary.[8] Finally, I **FIND** that while the seizure of the smartphone was proper, the searches of Defendant's smartphone for digital data that

---

[8] Exigent or emergency circumstances were not argued as a basis for the searches conducted prior to obtaining written consent.

were conducted without consent and without a warrant, violate the Fourth Amendment. Given that the Supreme Court has granted certiorari to address the lawfulness of conducting a warrantless search of a seized smartphone incident to arrest, and presumably will address this issue soon, it seems unnecessary to elaborate further on the basis for my conclusion since I also **FIND** the good faith exception to the violation applies as explained below.

### D. Good Faith and the Exclusionary Rule

While "[t]he general remedy for a Fourth Amendment violation is that evidence obtained due to the unconstitutional search or seizure is inadmissible[,]" *United States v. Dice*, 200 F.3d 978, 983 (6th Cir. 2000), suppression of evidence "is not an automatic consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 137 (2009), *quoted in Buford*, 632 F.3d at 270. As held in *Buford*, "[t]he Supreme Court's jurisprudence is clear: Whether the exclusionary sanction is appropriately imposed in a particular case . . . is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." 632 F.3d at 275-76 (alteration in original) (citations and internal quotation marks omitted). I **FIND** the government correctly contends that even if the searches of Defendant's smartphone were a violation of the Fourth Amendment, the exclusionary rule should not apply under the reasoning of cases such as *Davis v. United States*, 131 S. Ct. 2419 (2011), *Herring*, 555 U.S. 135, and *United States v. Leon*, 468 U.S. 897 (1984).

Exclusion of evidence is a "judicially created rule . . . 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Herring*, 555 U.S. at 139-40 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The exclusionary rule applies only "where its remedial objectives are thought most efficaciously served," *Arizona v. Evans*, 514 U.S. 1, 11

13

(1995) (citing *Leon*, 468 U.S. at 908), and "where it 'result[s] in appreciable deterrence.'" *Herring*, 555 U.S. at 141 (alteration in original) (quoting *Leon*, 468 U.S. at 909). "'[T]o the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against [its] substantial social costs.'" *Herring*, 555 U.S. at 141 (alteration in original) (quoting *Illinois v. Krull*, 480 U.S. 340, 352-53 (1987)). In the end, the decision to suppress evidence "turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Herring*, 555 U.S. at 137.

The government contends the exclusionary rule should not apply here because Officer Narramore engaged in a limited search of the smartphone at the scene of arrest and during the interview under a good faith assumption that no warrant was necessary. The government also argues against suppression because the purpose of the exclusionary rule is to deter future Fourth Amendment violations, not to remedy past ones. During the hearing, Defendant argued the good faith exception should not apply in this case under the logic of *Wurie*, 728 F.3d at 13-14.

Under *Davis*, "when the police conduct a search in objectively reasonable reliance on binding judicial precedent" that is subsequently reversed, there is no police wrongdoing to deter; and thus, no justification for excluding evidence. *Davis*, 131 S. Ct. at 2428-29; *see also United States v. Schuttpetz*, 467 F. App'x 349 (6th Cir. 2012). Although he had no binding smartphone-specific proclamation from either the Sixth Circuit or the Supreme Court to rely upon, Officer Narramore chose not to seek consent or a warrant from a neutral magistrate for the initial search believing "by law" he was not required to do so. At best, Officer Narramore was relying on non-binding decisions. As argued by Defendant, any assumption by law enforcement that the Sixth Circuit would follow certain non-binding precedent regarding the search of a cell phone appears to be a self-

14

derived rule designed to sanction the police conduct at issue.  Such a course of action is troubling given the relative ease of asking for either consent or a warrant in the absence of an emergency situation.  Nevertheless, I conclude Supreme Court authority regarding searches of other types of containers found on an arrestee's person, such as *Robinson* and its progeny, in combination with the decisions of all circuit courts to have addressed the issue of a cell phone search incident to arrest at the time of the searches of Defendant's smartphone, render the actions of Officer Narramore objectively reasonable under the reasoning of *Davis*.

Even if *Davis* only applies in cases where there is smartphone-specific *binding* authority, the benefits of deterrence in this case do not appear to outweigh the costs to society of suppression.  In *Herring*, the Supreme Court rejected the application of the exclusionary rule where an "officer reasonably believes there is an outstanding arrest warrant, but that belief turns out to be wrong because of a negligent bookkeeping error by another police employee."  555 U.S. at 137.  Analogizing to its decisions in *Leon*, 468 U.S. at 922 (exclusionary rule inapplicable where police act in objectively reasonable reliance on a warrant issued by a neutral magistrate) and *Evans*, 514 U.S. at 14–15 (exclusionary rule inapplicable where police acted in reasonable reliance on a database which mistakenly indicated that a warrant was outstanding), the Supreme Court concluded that any deterrent effect of applying the exclusionary rule in *Herring* was outweighed by the costs to society.  *Herring*, 555 U.S. at 140-43, 147-48.

The Sixth Circuit interpreted the impact of *Herring* on Fourth Amendment violations in *United States v. Master*, 614 F.3d 236, 241-43 (6th Cir. 2010).  In *Master*, a case involving a defective warrant, the Sixth Circuit read *Herring* as "effectively creat[ing] a balancing test by requiring that in order for a court to suppress evidence following the finding of a Fourth Amendment

violation, 'the benefits of deterrence must outweigh the costs.'" *Master*, 614 F.3d at 243 (quoting *Herring*, 555 U.S. at 141). The Sixth Circuit reasoned that "the *Herring* Court's emphasis seems weighed more toward preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless the officers engage in 'deliberate, reckless, or grossly negligent conduct.'" *Id.* (quoting *Herring*, 555 U.S. at 144). *See also United States v. Godfrey,* 427 F. App'x 409, 412 (6th Cir. 2011) (quoting *Master*); *but see United States v. Lazar*, 604 F.3d 230, 237-38 & n.6 (6th Cir. 2010) (rejecting that *Herring* had "greatly expanded" the good faith exception or had "changed the applicable standard," and finding "*Herring* does not purport to alter that aspect of the exclusionary rule which applies to warrants that are facially deficient warrants *ab initio*.").

Under *Herring*, as applied in *Master*, evidence should be suppressed "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Herring*, 555 U.S. at 143 (quoting *Krull*, 480 U.S. at 348-49) (internal quotation marks omitted); *accord Master*, 614 F.3d at 241-43.[9] Thus, a crucial finding needed to suppress evidence is the balance between whether police misconduct is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring,* 555 U.S. at 144. The Supreme Court has often held the exclusionary rule's sole purpose is to deter future Fourth

---

[9] It has been noted that the good faith exception could be in the process of swallowing the exclusionary rule. *Davis*, 131 S. Ct. at 2439 ("if the Court means what it now says, if it would place determinative weight upon the culpability of an individual officer's conduct, and if it would apply the exclusionary rule only where a Fourth Amendment violation was 'deliberate, reckless, or grossly negligent,' then the 'good faith' exception will swallow the exclusionary rule.") (Breyer, J., dissenting).

Amendment violations and has limited the rule's operation to situations in which the purpose of appreciable deterrence is achieved. *See, e.g., Davis*, 131 S. Ct. at 2426–27. Deterrent value alone, however, is insufficient for exclusion because any analysis must also "account for the 'substantial social costs' generated by the rule," since "[e]xclusion exacts a heavy toll on both the judicial system and society at large." *Id.* at 2427 (quoting *Leon*, 468 U.S. at 907). Application of the exclusionary rule to suppress evidence typically "requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence," so the "bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment." *Id.* at 2427. Thus, it is a remedy of last resort and the benefits of deterrence must outweigh the heavy cost of exclusion. *Id.*

Applying *Herring* and *Master*, the balance in this case favors admission of the evidence. There was no applicable cell phone-specific binding precedent that instructed Officer Narramore on the legality of searching Defendant's smartphone, but all circuit courts of appeals to have examined the issue at the time had approved such searches to some degree. The uncontradicted evidence establishes that Officer Narramore acted in good faith and reasonably believed he had authority to conduct a limited search of Defendant's smartphone incident to his lawful arrest. Defendant has failed to highlight any deliberate, reckless, or grossly negligent disregard of the Fourth Amendment by law enforcement that might sway the balance to suppression. The exclusionary rule's operation is limited to situations in which the purpose of appreciable deterrence is achieved, and this is not such a case.

As exclusion is a remedy of last resort, I **FIND** the benefits of deterrence in this case do not outweigh its heavy cost. *See Davis*, 131 S. Ct at 2427. I also **FIND** suppression is not an appropriate

17

remedy as Officer Narramore's conduct was objectively reasonable and not a deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights. Accordingly, I **CONCLUDE** application of the good faith exception in this matter would not stretch cases such as *Davis, Herring*, *Buford*, and *Master* beyond the bounds of precedent or the Fourth Amendment. Under the collective reasoning of the good faith precedent discussed above, I **FIND** a good faith exception to the exclusionary rule applies to the text messages obtained as a result of the warrantless, non-consensual searches of Defendant's smartphone.

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND** that Defendant's motion to suppress [Doc. 15] be **DENIED**.[10]

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[10] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are "frivolous, conclusive or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (citations and internal quotation marks omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).